UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSPEH BARRON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF NEW JERSEY, *et al.*, <br><br> Defendants. | Civ. No. 2:17-735 (WJM) <br><br><br> **OPINION** |

### WILLIAM J. MARTINI, U.S.D.J.:

Plaintiffs Joseph Barron ("Barron"), Janine Watts ("Watts"), and Tammy Godfrey-Khalil ("Godfrey-Khalil") (collectively, "Plaintiffs") bring this action, sounding in civil rights and in tort, against the State of New Jersey, then-New Jersey State Police Superintendent Rick Fuentes ("Fuentes"), Detective Stephen Reifler ("Reifler"), 12 other police officers ("Officer Defendants"), the Essex County Prosecutor and Assistant County Prosecutor Jennifer Fetterman ("ECPO Defendants," and together with Fuentes, Reifler, and the Officer Defendants, the "State Defendants"); Essex County; the Township of Irvington, its then-Police Chief Michael Chase ("Chase"), and then-Police Director Joseph Santiago ("Santiago"); and other unnamed individuals and entities. This matter comes before the Court on the State Defendants' Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.[1] No oral argument was held. FED. R. CIV. P. 78(b). For the reasons below, the State Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

#### A. Investigation and Arrest of Plaintiffs

The State Defendants, Township of Irvington, and Essex County (the "Public Entity Defendants") planned an operation as to suspected drug-dealing activities in apartment 2F at 525 Chancellor Avenue, Irvington, New Jersey. Compl. ¶ 46, ECF No. 1.[2] The Public Entity Defendants used a confidential informant to buy drugs from "Dawn," who

---

[1] The remaining Defendants—Essex County, Township of Irvington, Chase, and Santiago—do not join in the motion.

[2] Plaintiffs' Amended Complaint, which at times is unclear as to which Defendants are on notice to the allegations, has multiple errors with the page and paragraph numbers. It contains conflicting statements about claims being dismissed yet still references the dismissed matters. To provide clarity, when needed to keep the sequence of events in order, the Court will cite to the original Complaint. *See* ECF No. 1.

was the target of the investigation. *Id.* ¶ 47. Dawn lived in apartment 2FL ("2FL"), next door to Plaintiff Barron's apartment at 2FR ("2FR"). *Id.* ¶ 48.

During the investigation, Reifler obtained a search warrant on affidavit for Dawn's residence (2FL). *Id.* ¶ 49. Over a week later, the Officer Defendants held a briefing on the proposed sting operation. *Id.* ¶ 50. Fuentes, Township of Irvington law enforcement officers, including Chase and Santiago, Essex County employees, and the ECPO Defendants were either present or had knowledge of the operation and otherwise helped plan it. *Id.* ¶¶ 51–52. After the briefing, the Officer and Public Entity Defendants set up surveillance on 2FL, during which time someone saw "a black male wearing glasses and a black female with blondish hair" through a back rear window blind. Pls.' Opp'n, Ex. A ¶ 53, ECF No. 19–18 ("Am. Compl."). The Officer and Public Entity Defendants then forcibly entered 2FL and found drugs, but located no individuals, including Dawn. *Id.* ¶ 54.

Upon leaving 2FL, the same Defendants went to 2FR—where Plaintiffs were—and, without probable cause, requested and obtained consent to search that apartment. *Id.* ¶¶ 55–56. Once inside, the Defendants saw drugs which led to Plaintiffs' arrest and incarceration. Compl. ¶ 58. Plaintiffs claim the Officer Defendants and Public Entity Defendants planted the drugs as a pretext for arrest. *Id.* ¶¶ 57–58; Am. Compl. ¶ 29.

After Plaintiffs' arrest, Assistant Prosecutor Fetterman elicited grand jury testimony from Reifler that she knew or should have known was false. Am. Compl. ¶ 68. Reifler testified that Godfrey-Khalil was Dawn—although he never met or saw her, *id.* ¶ 69; that he spoke with the landlord of 2FL and 2FR who only speaks Portuguese, *id.* ¶ 70; that the landlord was unable to pick Dawn out of a photo lineup that included Godfrey-Khalil— having only the characteristics of being African-American females in common, *id.* ¶¶ 70– 71; and that Barron leased and paid utilities on both apartments. *Id.* ¶¶ 72–73. He also testified about seeing Godfrey-Khalil and another person from 2FL's window, but the police report is devoid of that observation. *Id.* ¶ 74. Finally, Reifler gave false testimony because Godfrey-Khalil and another individual were African-American. *Id.* As a result of the arrests, Barron was incarcerated for four months, Godfrey-Khalil for six months, and Watts for two and a half weeks. *Id.* ¶¶ 75–77. Assistant Prosecutor Fetterman then dismissed all charges against Plaintiffs. *Id.* ¶ 78.

### B. The Action Here

By consent, the parties agreed to dismiss certain claims. So the Court will address the remaining issues, those being violations of Plaintiffs' civil rights for false arrest, wrongful incarceration, racial profiling, and conspiracy under 42 U.S.C. §§ 1983, 1981, and 1985 (Count I) and the New Jersey Civil Rights Act ("NJCRA"), N.J. STAT. ANN. § 10:6–2, *et seq.* (Count II) and a state law malicious prosecution claim (Count V).

## II. LEGAL STANDARD

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d

744, 750 (3d Cir. 2005). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). Thus, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

## III. DISCUSSION

Under 42 U.S.C. § 1983, a defendant, acting under color of law, may be sued for deprivation of alleged constitutional or statutory rights. *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citation omitted); *Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("[S]tate officers [are not] absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."). Although subject to suit for official acts, state actors may assert absolute and qualified immunity defenses.

### A. Claims Against the Essex County Prosecutor - Absolute Immunity

Absolute immunity protects prosecutors from suit for actions taken during the course of "initiating and conducting prosecutions" such presenting evidence in probable cause hearing. *Burns v. Reed*, 500 U.S. 478, 485 (1991) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976)). Only those acts "intimately associated with the judicial phase of the criminal process" are immune from civil suit. *Burns*, 500 U.S. at 492. Of course, the scope of absolute immunity has limits. It does not apply to a prosecutor for "investigative functions normally performed by a detective or police officer." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Nor does absolute immunity apply to a prosecutor's legal advice to police about the existence of probable cause for arrest. *Burns*, 500 U.S. at 493.

Plaintiffs' arguments that during the investigation the Essex County Prosecutor knew they were not guilty, was aware of exculpatory evidence, and that he possessed knowledge that the "star witness" gave false testimony represents unadorned conclusions that fail to rise above a speculative level. *See* Am. Compl. ¶ 80. The Essex County Prosecutor enjoys absolute immunity for prosecutorial decisions and there lacks evidence showing "personal involvement" in the investigation that led to Plaintiffs' arrest and incarceration. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Thus, with immunity from suit and no non-prosecutorial misconduct alleged, the claims against the Essex County Prosecutor are **DISMISSED WITH PREJUDICE**.

### B. Claims Against Assistant Prosecutor Fetterman - Qualified Immunity

Qualified immunity shields Assistant Prosecutor Fetterman's actions, including evaluating the evidence, eliciting testimony from Reifler, and advising police to obtain a search warrant, from suit. "The doctrine of qualified immunity protects government

officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks and citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks, citation, and brackets omitted). In all, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Plaintiffs allege Assistant Prosecutor Fetterman violated their First, Fourth, and Fourteenth Amendment rights when she failed to both become involved in the investigatory phase and corroborate the false information "Reifler and/or others" provided her, which facilitated racial profiling. Am. Compl. ¶ 96. But Plaintiffs' allegations that Assistant Prosecutor Fetterman charged them based on Reifler's sworn testimony can serve as a sufficient basis for probable cause. *See Scott v. Farrell*, 2013 WL 6474488, at *3 (E.D. Pa. Dec. 10, 2013) (citing cases). Further, there is no clearly established right for a prosecutor or investigator "to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000) (citation omitted). With the facts available to Assistant Prosecutor Fetterman at the time she made the decision, it is unclear whether her conduct was knowingly unlawful. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). Thus, like the Essex County Prosecutor, the claims against Assistant Prosecutor Fetterman are **DISMISSED WITH PREJUDICE**.

### C. Section 1983 Claims Against Reifler and the Officer Defendants

In clarifying its position, Plaintiffs contend Reifler, the Officer Defendants, and Public Entity Defendants arrested them absent probable cause and that Reifler provided false statements that enabled the investigation, arrest, prosecution, and incarceration.

"Under § 1983, false arrest, false imprisonment, and malicious prosecution claims require a showing that the arrest, physical restraint, or prosecution was initiated without probable cause." *Pulice v. Enciso*, 39 F. App'x 692, 696 (3d Cir. 2002). A Fourth Amendment-based malicious prosecution claim requires evidence: (1) the defendants initiated a criminal proceeding; (2) the proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than to bring the plaintiff to justice; and (5) because of the proceeding, the plaintiff suffered a deprivation of liberty. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (quotation marks and citation omitted). Except for the fifth element, the state malicious prosecution claim mirrors the federal standard. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1197 (3d Cir. 1993) (citation omitted)). As to evaluating qualified immunity, the Court recognizes the clearly established "right to be free from arrest except on probable cause." *See Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). And also the "right to be free from criminal prosecution except upon probable cause." *Donahue v. Gavin*, 280 F.3d 371, 379 (3d Cir. 2002).

Although Plaintiffs allege Defendants lacked probable cause for arrest, apart from identifying Reifler's conduct in making false statements to the grand jury, the allegations lack particularity as to each individual Defendant's role. Plaintiffs must assert plausibly why there lacked probable cause for arrest and how each individual Defendant acted maliciously or for a purpose other than to bring Plaintiffs to justice. Thus, as to the Officer Defendants, the Court will **DISMISS WITHOUT PREJUDICE** the false arrest, wrongful incarceration, and malicious prosecution claims. These claims will remain against Reifler because if he did testify falsely and concoct facts to establish probable cause for Plaintiffs' arrest that led to their indictment, he cannot then claim qualified immunity. *See Burt v. Ferrese*, 871 F.2d 14, 16 (3d Cir. 1989).

As to the Fourteenth Amendment racial profiling claim, Plaintiffs have failed to state a claim. The amended allegations are replete with conclusory statements that Defendants acted a certain way because Plaintiffs were African-American and had a penchant for criminality. The allegation against Reifler claims he wrongly identified Godfrey-Khalil as "Dawn" because both happened to be African American women. Am. Compl. ¶¶ 33, 69, 71. Such statements fail to satisfy the post-*Iqbal* pleading standards. Thus, the Court will **DISMISS** the Section 1983 racial profiling claim **WITHOUT PREJUDICE**.

### D. Section 1983 Claims Against Fuentes (Supervisory Official Liability)

Plaintiffs failed to allege with requisite specificity how Superintendent Fuentes had personal involvement in the operation that led to their unlawful arrests and incarceration. Nor do Plaintiffs allege how Fuentes fostered a policy or custom that caused their injuries. Merely alleging that he failed to take action and adopt policies to address officer misconduct is not enough. *Id.* ¶ 79. Such conclusory statements fail to show that Fuentes directly participated in, or had knowledge of and acquiesced to, his subordinates' conduct. *See Rode*, 845 F.2d at 1207. Thus, Plaintiffs' claims against Fuentes fall short and are **DISMISSED WITHOUT PREJUDICE**.

### E. Section 1985 Conspiracy Claim Against Fuentes, Reifler, and Officer Defendants

To state Section 1985(3) claim, Plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citation omitted).

At bottom, Plaintiffs have failed to plead a viable conspiracy claim. As to the ECPO Defendants, with deficient underlying Section 1983 claims, the Section 1985(3) claims are **DISMISSED WITH PREJUDICE**. As to Fuentes and the Officer Defendants, in failing to properly allege the supporting Section 1983 claim, Plaintiffs' Section 1985(3) claims against them also fail and are **DISMISSED WITHOUT PREJUDICE**. As to Reifler, since it takes at least two persons to form a conspiracy, the Section 1985(3) conspiracy claim is **DISMISSED WITHOUT PREJUDICE**.

### F. NJCRA and Section 1981 Claims Against the State Defendants

The NJCRA is essentially the New Jersey State law analogue to Section 1983 and it "was not intended to create any new substantive rights." *See Perez v. Zagami, LLC*, 94 A.3d 869, 875, 877 (N.J. 2014). "Courts in this district have generally interpreted the NJCRA to be coextensive with its federal counterpart." *Docherty v. Cap May Cnty.*, 2017 WL 2819963, at *12 (D.N.J. June 29, 2017) (citing *Gormley v. Wood-El*, 218 N.J. 72, 97 (2014)). Thus, the Court **DISMISSES** the NJCRA claims against the State Defendants **WITH PREJUDICE**.

Next, Plaintiffs put forth a Section 1981 race discrimination claim, but that too fails because precedent shows "no implied private right of action exists against state actors under 42 U.S.C. § 1981." *McGovern v. City of Philadelphia*, 554 F.3d 114, 122 (3d Cir. 2009). If appropriate, a plaintiff may bring a Section 1981 race discrimination claim against a state actor under 42 U.S.C. § 1983. Thus, the Court will **DISMISS** the Section 1981 claims against the State Defendants **WITH PREJUDICE**.

### IV.  CONCLUSION

Upon the State Defendants and Plaintiffs' consent, Counts III, IV, and VI; the claims against Fuentes, Reifler, and the Officer Defendants in their official capacities only; and all claims against the State of New Jersey as a separate entity are **DISMISSED WITH PREJUDICE**.

The State Defendants' motion to dismiss is **GRANTED** in part in that the NJCRA and Section 1981 claims against the State Defendants are **DISMISSED WITH PREJUDICE**. The Section 1983 and 1985 claims against the ECPO Defendants are also **DISMISSED WITH PREJUDICE**. As to Fuentes and the Officer Defendants, the Section 1983, 1985, and state malicious prosecution claims are **DISMISSED WITHOUT PREJUDICE**. As to Reifler, the motion to dismiss is **GRANTED** in part in that the Section 1983 racial discrimination and Section 1985 conspiracy claims are **DISMISSED WITHOUT PREJUDICE**, but it is **DENIED** in part as to dismissing the remaining Section 1983 and state malicious prosecution claims. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date:  January 8, 2018**