UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOESPH L. BARRON, et al.

                **Plaintiffs,**

v.

STATE OF NEW JERSEY, et al.,

                **Defendants.**

Civil Action No. 17-735 (WJM)

<u>OPINION</u>

<u>FALK</u>, U.S.M.J.:

Before the Court is Plaintiffs' motion to compel.  (CM/ECF No. 75.)  The motion is opposed. The motion is decided on the papers.  Fed.R.Civ.P. 78(b).  For the reasons set forth below, the motion is **denied**.

I.      BACKGROUND

This is a civil rights action arising out of the alleged wrongful arrest of Plaintiffs Joseph Barron, Janine Watts and Tammy Godfrey-Khalil.  Plaintiffs were arrested following a sting operation carried out by the New Jersey State Police, the Essex County Prosecutor, and the Irvington Township Police Department which targeted suspected drug-dealing activities in an apartment in Irvington, New Jersey.  Plaintiffs allege that New Jersey State Trooper Reifler ("Reifler") provided false statements that enabled the investigation, and supplied false grand jury testimony, all of which led to the wrongful

arrest, prosecution and ultimate incarceration of Plaintiffs.  As a result, Barron was incarcerated for four months, Godfrey-Khalil for six months and Watts for two and a half weeks.  The government ultimately dismissed the charges.

Plaintiffs filed a Complaint asserting civil rights and tort claims against the State of New Jersey and several of its officers, including Reifler, the Essex County Prosecutor, the Township of Irvington and two of its officers.  Following dispositive motion practice[1] and a stipulation of dismissal as to some defendants, the only claims which remain are Section 1983 claims for false arrest, wrongful incarceration, and malicious prosecution against Reifler in his individual capacity.

Following the opening of discovery, Plaintiffs served a subpoena on the New Jersey State Police ("NJSP").  NJSP responded to the subpoena by producing the Internal Investigation 2016-0263 ("IA file") related to the incident in question, with the exception of two documents contained therein: (1) Allegations & Conclusions ("A&C" or "Allegations & Conclusions"), and (2) Review Sheets.  Plaintiffs demanded production of the A&C and Review sheets stating that they are probative to liability in this case. NJSP refused to produce the documents asserting that they are privileged.  After an attempt by the Court to informally resolve the parties' dispute over the subpoenaed documents and following Counsel conferring on the matter, the parties remained at an *impasse*.  The parties submitted briefing on the issue.

---

[1] Section 1983 claims (Supervisory Official Liability) against Defendant Superintendent Rick Fuentes were dismissed without prejudice.

## II.    CURRENT MOTION

Defendants assert that the A&C and the Review Sheets are protected by the deliberative process privilege[2] and that even after balancing Plaintiffs' need for the information, the documents should remain protected.  To this end, NJSP argues that the A&C and the Review Sheets are pre-decisional and deliberative.  NJSP describes in detail those segments of the IA file as follows:

> The [NJSP's] . . . Internal Investigations Bureau . . . investigate[s] allegations of misconduct made against NJSP personnel.  The investigations determine whether an allegation against the subject Trooper is accurate and, if so, whether the Trooper's conduct violates any state or federal law, or any rule or regulation applicable to the members of the NJSP.  After an investigation is completed, the investigating officer summarizes the allegations and conclusions generated by the investigation, and provides recommendations as to the merit of the complaint ("Allegations & Conclusions").
>
> Thereafter, the investigator's completed investigation is forwarded through the Internal Investigations Bureau chain of command for independent review by supervising members . . . . The reviewing officers do not conduct an independent factual investigation.  Rather, their role is to ensure the completeness of the investigation and offer their pre-decisional opinions, based on their training and experience ("Review Sheets").  The Major and commanding officer . . . then formulates a recommendation, supported by charges and specifications prepared by his staff, that is then submitted to the NJSP Superintendent to determine whether to pursue any disciplinary action.

(NJSP Br. at 5-6.)

NJSP contends that A&C and Review Sheets are a post-investigation summary and evaluation of evidence gathered during the investigation, and the investigating

---

[2] NJSP also asserts the self-critical privilege as a basis for withholding the documents.  As will be set forth below, because the Court finds that the withheld documents are protected by the deliberative process privilege, it need not address NJSP's assertion of the self-critical privilege.

Trooper's recommendation as to the merit of the IA complaint.  NJSP argues that the

A&C and Review Sheets are precisely the pre-decisional documents that the deliberative

process privilege protects, noting that neither the A&C nor Review Sheets offer any

independent evidentiary value to Plaintiffs' claims in this case.  NJSP contends that the

chilling effect on the candor of the reviewing officers should such documents be

disclosed outweighs Plaintiffs' need for the discovery in this case.  (NJSP Br. at 12.)

Plaintiffs seek an Order compelling NJSP to produce the A&C and Review sheets

asserting several arguments in support.  Plaintiffs maintain that their need for the

information outweighs NJSP's claim of privilege.  Noting that discovery provided to date

suggests that Reifler was disciplined for "problems with his reporting," Plaintiffs argue

that the "reason this information is critical is because it may establish the liability of the

officer."  (Pl.'s Br. at 2.)  Plaintiffs claim that the "findings of misconduct could not be

more probative on [Reifler's] liability, his knowledge of police procedure and violations

thereof, bearing directly on deliberate indifference."  (Pl.'s Br. at 10.)  To this end,

Plaintiffs contend that "[e]xpert review on policies violated would be critical to the

evaluation of liability."  (Id.)  Plaintiffs argue that the documents may be similarly

relevant to their claim for supervisory responsibility, which was dismissed, without

prejudice, upon dispositive motion practice.

### III.    LEGAL STANDARD

The deliberative process privilege "permits the government to withhold documents

containing 'confidential deliberations of law or policymaking, reflecting opinions,

recommendations or advice.'"  *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55

F.3d 827, 853 (3d Cir. 1995) (quoting *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir.

1987)).  The privilege "recognizes 'that were agencies forced to operate in a fishbowl, the

frank exchange of ideas and opinions would cease and the quality of administrative

decisions would consequently suffer.'"  *Redland Soccer Club*, 55 F.3d at 854 (quotations

omitted).  It "'protects agency documents that are both predecisional and deliberative.'"

*Abdelfattah v. U.S. Dept. of Homeland Sec.*, 488 F.3d 178, 183 (3d Cir. 2007) (quotations

omitted).

        In order for the privilege to apply, the governmental entity asserting the privilege

must show that the documents sought are "'predecisional and deliberative.'" *Abdelfattah*

*v. U.S. Dept. of Homeland Sec.*, 488 F.3d 178, 183 (3d Cir. 2007) (quotations omitted).

In order to be predecisional, a document must concern an anticipated agency decision and

have been generated prior to the actual decision being reached.  *See N.L.R.B. v. Sears,*

*Roebuck & Co.*, 421 U.S. 132, 151-52 (1975); *see also United States v. Pechiney Plastics*

*Packaging, Inc.*, No. 09-5692, 2013 WL 1163514, at *13 (D.N.J. Mar. 19, 2013).  To be

deliberative, a document must reflect "'advisory opinions, recommendations and

deliberations comprising part of a process by which governmental decisions and policies

are formulated.'"  *N.L.R.B.*, 421 U.S. 150.  In other words, the material must "reflect[]

the give and take of the consultative process."  *Bayliss v. New Jersey State Police,No.* 11-

890, 2013 WL 5423039, at 4 (D.N.J. Sept. 20, 2013) (quotations omitted).

        The privilege is not absolute.  *See Redland Soccer Club*, 55 F.3d at 854.  Once the

government establishes that the deliberative process privilege applies, the Court performs

a balancing test to weigh the benefit of preserving the integrity of internal governmental

deliberations against the need for free and open discovery." *U.S. v. Ernstoff*, 183 F.R.D. 148, 152 (D.N.J. 1998). "The party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest." *Redland Soccer Club*, 55 F.3d at 854. The Court considers: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are voiable." *Id.* (quotations omitted).

## IV. ANALYSIS

The NJSP has satisfied the formal procedural requirements for establishing the deliberative process privilege. *See Ernstoff*, 183 F.R.D. at 152. It issued a formal claim of privilege through Major James A. Parker, Commanding Officer of the NJSP Office of Professional Standards.[3] It identified and described the documents at issue and stated precise and certain reasons for asserting confidentiality over them. *See id.* at 153.

The NJSP has also demonstrated a *prima* facie case for the application of the deliberative process privilege to the A&C and Review Sheets here. The NJSP has established that the information being withheld is predecisional and deliberative. The withheld documents were generated for the purpose of ultimately determining whether Reifler's conduct violated any state or federal law, or any rule or regulation applicable to

---

[3] Initially, Plaintiffs argued that NJSP failed to satisfy the procedural requirements for asserting privilege because it did not submit an affidavit from a responsible NJSP official making a formal claim of privilege and providing precise reasons for asserting it. With the Court's permission, NJSP supplemented its submission with the Certification of Major James A. Parker.

members of the NJSP, and whether discipline consequently should be imposed.

(Certification of Major James A. Parker ("Parker Certif.") at ¶ 3.)  As explained in the

certification of Major Parker, the investigating officer prepares the Allegations and

Conclusions portion of the internal investigation file which are "a reflection of an internal

deliberative process of applying the facts adduced through the investigatory process to

the allegations made, and coming to an initial conclusion as to whether the trooper has in

fact committed a violation." (Parker Certif. at ¶¶ 4-5.)  *See In re U.S.*, 321 Fed. Appx.

953, 959 (Fed. Cir. 2009) ("factual information that itself reveals the deliberative process

and cannot be severed from the deliberative context is protected.")  Supervising members

in the OPS chain of command review the investigating officer's findings and memorialize

their opinions and recommendations as to whether to impose discipline in the Review

Sheets.  (Parker Certif. at ¶¶ 8-9.)  Major Parker then considers the complete file,

including the Review Sheets and the Allegations & Conclusions, and formulates a

recommendation to the Superintendent of the State Police, the ultimate decision maker,

who renders a decision on any disciplinary action.  (Parker Certif. at ¶ 11.)  The contents

of the Allegations and Conclusions and the Review Sheets are precisely the type of

internal, advisory communications contemplated by the deliberative process privilege.[4]

*See Bayliss v. New Jersey State Police*, 622 Fed. Appx. 182, 185 (3d Cir. 2015) (finding

---

[4] The need for confidentiality is underscored by Major Parker.  He states that he "rel[ies] heavily upon the candid summaries and evaluations of [his] command staff before submitting [his] recommendation to the Superintendent" and that the disclosure of A&C and Review Sheets "would have a chilling effect on the candor of the reviewing officers."  (Parker Certif. at ¶¶ 12-13.)  Major Park underscores that "to deny the Superintendent the free flow of advice from his experienced supervisory personnel undermines the public interest, would unreasonably and unnecessarily restrict the orderly functioning of the NJSP, and negatively affect the administration of the trooper disciplinary system."   (Parker Certif. at ¶ 14.)

NJSP's Review Sheets protected by the deliberative process privilege).

Plaintiffs have not demonstrated that their need for the withheld documents outweighs the NJSP's interest in maintaining their confidentiality. The A&C and Review Sheets contain no new factual information beyond what is contained in the investigation report itself. (Parker Certif. at ¶ 13.) NJSP has already provided Plaintiff with the investigation report which presumably contains the identify of the investigating officer, the identities and statements of all witnesses and all of the facts established from the investigation and relied upon by NJSP Office of Professional Standards in making its disciplinary decision. Plaintiffs can depose witnesses regarding information gleaned from the investigation report. Moreover, the A&C and Review Sheets have marginal, if any, relevance to Plaintiffs' claims for false arrest, wrongful incarceration, and malicious prosecution against Reifler in his individual capacity. To the extent Plaintiffs argue that the information is relevant to their supervisory liability claims, those claims have been dismissed. *See Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (The purpose of discovery is to uncover evidence of the facts pleaded in the Complaint, not 'to find a cause of action.")

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion to compel is denied.


                                            **Mark Falk**
                                            **MARK FALK**
        **Dated: November 2, 2020**         **United States Magistrate Judge**